## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GLOBAL REINSURANCE CORPORATION OF AMERICA, | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                                  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                                                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.        ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                                                                                ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)                                                                                                                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.              ( X )

| | | |
|---|---|---|
| April 27, 2011 | *[signature]* | GLOBAL Reinsurance Corp. of Am. |
| **Date** | **Attorney-at-law** | **Attorney for** Plaintiff |
| | William F. McDevitt | |

| | | |
|---|---|---|
| 215.587.1600 | 215.587.1699 | wfmcdevitt@cpmy.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

721337_1

UNITED STATES DISTRICT COURT                                                **APPENDIX I**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _436 Walnut St.. Philadelphia. Pennsylvania 19106_

Address of Defendant: _Times Square Tower, 7 Times Square, 37th Floor, New York, NY 10036_

Place of Accident, Incident or Transaction: _Alleged breach of terms of reinsurance contract between diverse parties._
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))___     Yes ☒   No ☐

Does this case involve multidistrict litigation possibilities?     Yes ☐   No ☒
*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, _William F. McDevitt_____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: _4/27/11_          _____          _80206_
                          Attorney-at-Law                 Attorney I.D.#

**NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.**

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _4/27/11_          _____          _80206_
                          Attorney-at-Law                 Attorney I.D.#

CIV. 609 (4/03)

## IN THE UNITED STATES DISTRICT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

ACE PROPERTY & CASUALTY INSURANCE : 
COMPANY (f/k/a/ CIGNA PROPERTY & : 
CASUALTY INSURANCE COMPANY), as : 
Successor-In-Interest to CENTRAL NATIONAL : 
INSURANCE COMPANY OF OMAHA, as : 
respects policies issued through CRAVENS, :   No.
DARGAN & COMPANY, PACIFIC COAST, : 
                             : 
            Plaintiff, : 
             : 
    v. : 
             : 
GLOBAL REINSURANCE CORPORATION OF : 
AMERICA (FORMERLY KNOWN AS : 
CONSTITUTION REINSURANCE : 
CORPORATION), : 
             : 
            Defendant. : 

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1441 and 1446, defendant GLOBAL Reinsurance Corporation of America ("GLOBAL"), formerly known as Constitution Reinsurance Corporation ("Constitution Re"), with full reservation of any and all defenses, objections, and exceptions, hereby removes this civil action from the Court of Common Pleas, Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania, the judicial district where this matter is now pending. In support thereof, defendant states as follows:

1.       On or about April 13, 2011, Plaintiff ACE Property and Casualty Insurance Company ("ACE") commenced this action in the Court of Common Pleas, Philadelphia County, State of Pennsylvania, April Term, 2011 Case No. 1531. The Court of Common Pleas, Philadelphia County, State of Pennsylvania is within the judicial district of this Court.

2.     All process, pleadings, and papers that have been filed and provided to Defendant GLOBAL in that action are attached hereto as Exhibit 1.

3.     This Notice is timely filed pursuant to 28 U.S.C. § 1446(b).

4.     This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332, and defendant may remove this action under the provisions of 28 U.S.C. § 1441 because it is a civil action in which the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

5.     Complete diversity of citizenship exists between plaintiff and defendant in that Plaintiff ACE is a corporation organized under the laws of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania, and Defendant GLOBAL is a corporation organized under the laws of the State of New York with its principal place of business in the State of New York.

6.     The amount in controversy, as pled in Plaintiff's complaint, exceeds $75,000, exclusive of interest and costs.

7.     Concurrently with filing this Notice of Removal, Defendant is giving written notice of the filing of this Notice of Removal to Plaintiff, and is filing a copy of the Notice of Removal with the Clerk of the Court of Common Pleas, Philadelphia County, as required by 28 U.S.C. § 1446(d).

WHEREFORE, GLOBAL Reinsurance Corporation of America respectfully removes this matter from the Court of Common Pleas, Philadelphia County, State of Pennsylvania to this Court as a removed claim or cause of action under 28 U.S.C. §§1441 and 1446.

Respectfully submitted,

CHRISTIE, PABARUE, MORTENSEN and YOUNG
*A Professional Corporation*

By: _____
JAMES W. CHRISTIE
WILLIAM F. MCDEVITT
jwchristie@cpmy@cpmy.com,
wfmcdevitt@cpmy.com
1880 JFK Boulevard - 10th Floor
Philadelphia, PA 19103; (215) 587-1600

*Attorneys for Defendant*
*GLOBAL Reinsurance Corporation of America*

*Of Counsel:*

Mark G. Sheridan
Bonny S. Garcha
BATES CAREY NICOLAIDES LLP
191 N. Wacker Drive, Suite 2400
Chicago, IL 60606
(312) 762-3100 (Telephone)
(312) 762-3200 (Facsimile)
msheridan@bcnlaw.com
bgarcha@bcnlaw.com

Dated: April 27, 2011

3

721325_1

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the foregoing

Notice of Removal who did not receive electronic service of the same through the Philadelphia

Court of Common Pleas ECF system by depositing same in the United States mail, properly

addressed with sufficient postage affixed thereto to ensure delivery to:

Christine G. Russell, Esquire
WHITE AND WILLIAMS
1800 One Liberty Place
1650 Market St.
Philadelphia, Pa 19103-7395


_____
WILLIAM F. McDEVITT

Dated:  April 27, 2011

721325_1

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**APRIL 2011**          **001531**

E-Filing Number: 1104022627

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| ACE P&C INS CO (F/K/A CIGNA P&C INS CO) | GLOBAL REINSURANCE CORP. OF AMERICA (F/K/A CONSTITUTION RE) |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| 436 WALNUT STREET PHILADELPHIA PA 19106 | TIMES SQUARE TOWER 7 TIMES SQUARE, 37TH FLOOR NEW YORK NY 10036 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal<br>[ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[ ] Jury<br>[ ] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [X] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

CASE TYPE AND CODE

1O - CONTRACTS OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | FILED PRO PROTHY<br>APR 13 2011<br>S. GARRETT | IS CASE SUBJECT TO COORDINATION ORDER?<br>YES          NO |
|---|---|---|

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: ACE P&C INS CO (F/K/A CIGNA P&C INS CO)

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| BRENDAN D. MCQUIGGAN | 1650 MARKET STREET ONE LIBERTY PLACE SUITE 1800 PHILADELPHIA PA 19103 |
| PHONE NUMBER (215)864-7173 | FAX NUMBER (215)789-7530 | |
| SUPREME COURT IDENTIFICATION NO. 206567 | E-MAIL ADDRESS mcquigganb@whiteandwilliams.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY *BRENDAN MCQUIGGAN* | DATE SUBMITTED Wednesday, April 13, 2011, 05:24 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMMERCE PROGRAM ADDENDUM
## TO CIVIL COVER SHEET

This case is subject to the Commerce Program because it is not an arbitration matter and it falls within one or more of the following types (check all applicable):

1. Actions relating to the internal affairs or governance, dissolution or liquidation, rights or obligations between or among owners (shareholders, partners, members), or liability or indemnity of managers (officers, directors, managers, trustees, or members or partners functioning as managers) of business corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises, including but not limited to any actions involving interpretation of the rights or obligations under the organic law (e.g., Pa. Business Corporation Law), articles of incorporation, by-laws or agreements governing such enterprises;

**X** 2. Disputes between or among two or more business enterprises relating to transactions, business relationships or contracts between or among the business enterprises. Examples of such transactions, relationships and contracts include:

    (1) Uniform Commercial Code transactions;

    (2) Purchases or sales of business or the assets of businesses;

    (3) Sales of goods or services by or to business enterprises;

    (4) Non-consumer bank or brokerage accounts, including loan, deposit cash management and investment accounts;

    (5) Surety bonds;

    (6) Purchases or sales or leases of, or security interests in, commercial, real or personal property; and

    (7) Franchisor/franchisee relationships.

3. Actions relating to trade secret or non-compete agreements;

4. "Business torts," such as claims of unfair competition, or interference with contractual relations or prospective contractual relations;

5. Actions relating to intellectual property disputes;

6. Actions relating to securities, or relating to or arising under the Pennsylvania Securities Act;

7. Derivative actions and class actions based on claims otherwise falling within these ten types, and consumer class actions other than personal injury and products liability claims;

8. Actions relating to corporate trust affairs;

**X** 9. Declaratory judgment actions brought by insurers, and coverage dispute and bad faith claims brought by insureds, where the dispute arises from a business or commercial insurance policy, such as a Comprehensive General Liability policy;

10. Third-party indemnification claims against insurance companies where the subject insurance policy is a business or commercial policy and where the underlying dispute would otherwise be subject to the Commerce Program, not including claims where the underlying dispute is principally a personal injury claim.

ACE PROPERTY & CASUALTY INSURANCE
COMPANY (f/k/a/ CIGNA PROPERTY &
CASUALTY INSURANCE COMPANY), as
Successor in Interest to CENTRAL NATIONAL
INSURANCE COMPANY OF OMAHA, as
respects policies issued through CRAVENS,
DARGAN & COMPANY, PACIFIC COAST,

                      Plaintiff,

   v.

GLOBAL REINSURANCE CORPORATION OF
AMERICA (FORMERLY KNOWN AS
CONSTITUTION REINSURANCE
CORPORATION),

                     Defendant.

:
:
:
:
:
:
:

:
:
:

:
:

:
:
:
:
:
:

*Filed and Attested by
PROTHONOTARY
13 APR 2011 05:34 pm
S. GARRETT*

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

NO.

## COMPLAINT – CIVIL ACTION

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER [OR CANNOT AFFORD ONE], GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR FEE.

**PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION
SERVICE
1101 Market Street, 11th Floor
Philadelphia, PA 19107
Telephone: 215-238-6300**

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparesencia es rita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos improtantes para usted.

USTED DEBE LLEVAR ESTE PAPEL SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE Un ABOGADO [O NO PUEDE PRODUCIR UNO], VAYA A O LLAME POR TELÉFONO LA OFICINA DISPUESTA ABAJO [DESCUBRIR DÓNDE USTED PUEDE CONSEGUIR AYUDA LEGAL]. ESTA OFICINA PUEDE PROVEER De USTED La INFORMACIÓN SOBRE EMPLEAR A un ABOGADO. SI USTED NO PUEDE PERMITIRSE AL HIRE A un ABOGADO, ESTA OFICINA PUEDE PODER PROVEER DE USTED LA INFORMACIÓN SOBRE LAS AGENCIAS QUE LOS SERVICIOS JURÍDICOS de la OFERTA de MAYO A LAS PERSONAS ELEGIBLES EN Un HONORARIO REDUCIDO O NINGÚN HONORARIO.

**ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
SERVICIO DE REFERENCIA E INFORMACIÓN
LEGAL
1101 Market Street, 11th Floor, Filadelfia,
Pennsylvania 19107, Teléfono: 215-238-63**

Case ID: 110401531

**WHITE AND WILLIAMS LLP**
BY:   Christine G. Russell (Atty. No. 76915)
        Ellen K. Burrows (Atty. No. 38647)
        Brendan D. McQuiggan (Atty. No. 206567)
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
215.864.6301/7028/7173
russellc@whiteandwilliams.com
burrowse@whiteandwilliams.com
mcquigganb@whiteandwilliams.com

Attorneys for Plaintiff,
ACE Property & Casualty Insurance
Company (f/k/a CIGNA Property &
Casualty Insurance Company), as
successor in interest to Central National
Insurance Company of Omaha, as
respects policies issued through Cravens,
Dargan & Company, Pacific Coast

---

| | | |
|---|---|---|
| ACE PROPERTY & CASUALTY INSURANCE COMPANY (f/k/a/ CIGNA PROPERTY & CASUALTY INSURANCE COMPANY), as Successor in Interest to CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, as respects policies issued through CRAVENS, DARGAN & COMPANY, PACIFIC COAST, | : : : : : : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| | : : | NO. |
| Plaintiff, | : : | |
| v. | : : | |
| GLOBAL REINSURANCE CORPORATION OF AMERICA (FORMERLY KNOWN AS CONSTITUTION REINSURANCE CORPORATION), | : : : : : | |
| Defendant. | : : | |

---

## COMPLAINT – CIVIL ACTION

Plaintiff, ACE Property & Casualty Insurance Company (f/k/a CIGNA Property &

Casualty Insurance Company), as successor in interest to Central National Insurance Company

of Omaha, as respects policies issued through Cravens, Dargan & Company, Pacific Coast, by

and through its attorneys, White and Williams, LLP, and by way of Complaint against Defendant

Global Reinsurance Corporation of America (formerly known as Constitution Reinsurance

Corporation) ("Global") avers as follows:

## PARTIES

1.    Plaintiff, ACE Property & Casualty Insurance Company, formerly known as CIGNA Property & Casualty Insurance Company, as successor in interest to Central National Insurance Company of Omaha, but only as respects policies issued through Cravens, Dargan & Company, Pacific Coast (hereinafter "CNIC"), is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

2.    Global is a New York corporation with its principal place of business located at Times Square Tower, 7 Times Square, 37th Floor, New York, NY 10036.

## JURISDICTION AND VENUE

3.    This Court has personal jurisdiction over Global because, upon information and belief, Global regularly conducts business in Philadelphia County including but not limited to contacts relating to the claims that are the subject of this action.

4.    Venue is proper in this Court because, on information and belief, Global regularly conducts business in this County and the cause of action arose in Philadelphia County and transactions and occurrences out of which this cause of action arose took place in Philadelphia County.

## BACKGROUND

5.    This action arises out of and seeks damages and other relief in connection with Global's breach of a reinsurance contract.

6.    In a reinsurance contract, a reinsurer agrees to indemnify the reinsured company against all or part of the loss that the reinsured may sustain under an insurance policy or policies the company has issued, in exchange for a portion of the premium paid to the reinsured for the insurance policies.

7.    A "facultative" reinsurance contract reinsures a specific insurance policy or risk, as opposed to "treaty" reinsurance, which reinsures multiple insurance policies or an entire book of business written by the reinsured.

## THE CERTIFICATE OF FACULTATIVE REINSURANCE

8.    For the period December 31, 1976 to August 1, 1978, CNIC entered into a facultative reinsurance contract with Global (then Constitution Reinsurance Corporation), Certificate Number 64217, (the "Facultative Certificate") pursuant to which Global, as the reinsurer, agreed to reinsure, on an excess of loss basis, an excess umbrella liability policy, number CNU 12 48 72, that CNIC issued to Wylain, Inc., now known as Marley Wylain Inc. (hereinafter referred to as "Marley"). A true and correct copy of the Facultative Certificate is attached hereto as Exhibit "A."

9.    The Facultative Certificate obligates Global to reimburse CNIC for Global's proportion of indemnity and defense costs included within the underlying policy limit as well as certain other expenses incurred in connection with losses under the CNIC policy. (*See* Exh. A.)

10.    As with many reinsurance contracts, the Facultative Certificate provided that Global's liability "shall follow that of [CNIC] and shall be subject in all respects to all the terms and conditions of [CNIC's] policy . . . ." Exh. A at 2, para. A.

11.    The Facultative Certificate also contains "follow the settlements" language which provides that all of CNIC's loss settlements under the Marley policy "shall be binding" upon Global. Exh. A at 2, para. E.

**THE UNDERLYING ASBESTOS CLAIMS AND CNIC'S LOSS PAYMENTS**

12.    After the Facultative Certificate was executed, Marley was named as a defendant in certain asbestos products personal injury claims and lawsuits. These claims and lawsuits were tendered to Marley's primary insurers for defense and indemnity.

13.    Eventually, the insurance coverage below CNIC's policy exhausted, and CNIC agreed to participate in defense and indemnity of Marley claims, pursuant to the terms of Policy No. CNU 12 48 72 and subject to the terms of a settlement and funding agreement between Marley and certain of its insurers.

14.    CNIC's obligations under the settlement and funding agreement were undertaken after a good faith, reasonable and business-like assessment of CNIC's duties under the umbrella excess liability policy and possible coverage defenses. The allocation of responsibility for defense and indemnity dollars among CNIC's insurers within the agreement was the product of good faith, reasonable and business-like negotiations among the parties, and gave due consideration to the terms of the insurance policy CNIC issued to Marley.

**CNIC'S REINSURANCE BILLING TO GLOBAL**

15.    By December of 2010, CNIC's loss payments on behalf of Marley exceeded the $10 million retention on the Facultative Certificate.

16.    Subsequent to earlier reporting, CNIC issued a billing to Global pursuant to the Facultative Certificate on or around December 3, 2010 in the amount of $20,039.95.

17.    CNIC issued a subsequent billing to Global pursuant to the Facultative Certificate on or around March 9, 2011. By that time, cumulative billing on the Facultative Certificate had exceeded $101,000. CNIC reasonably expects that, over the years, it will issue substantial additional billings under the Facultative Certificate.

18.   Along with the billings and with its prior updates and reports, CNIC provided Global with substantive information regarding the claims and portions of its investigative claims file.

19.   The Facultative Certificate provides that, "[u]pon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the [Facultative Certificate]."

20.   CNIC has provided Global with a "definite statement of loss" with respect to its billings. CNIC has properly performed under the contract and CNIC's billings to Global are due and payable.

21.   Global has not paid CNIC's billings.

22.   Currently, Global owes CNIC $101,790.78 under the Facultative Certificate for its share of defense and indemnity payments and expenses in connection with the underlying asbestos claims against Marley.  CNIC expects to submit periodic, additional billings to Global under the Facultative Certificate with respect to these claims.

<u>COUNT ONE</u>

**Breach of Contract**

23.   CNIC repeats and incorporates herein by reference the allegations contained in the foregoing paragraphs 1 through 24 above as if fully set out at length.

24.   CNIC and Global entered into the Facultative Certificate.

25.   CNIC has fully performed its obligations under the Facultative Certificate and has properly billed Global for amounts due thereunder.

26.   In breach of the Facultative Certificate and in violation of its duty of utmost good faith to CNIC, Global has refused to pay CNIC's billings.

WHEREFORE, CNIC demands that judgment be entered in its favor and against Global as follows:

    (a)    Awarding CNIC money damages plus interest with respect to outstanding billings;

    (b)    For attorneys' fees, interest and costs of suit; and

    (c)    Such other relief the Court deems appropriate.

## COUNT TWO

### Declaratory Relief

27.    Plaintiff repeats and incorporates herein by reference the allegations contained in the foregoing paragraphs 1 through 28 above as if fully set out at length.

28.    An actual controversy exists with respect to the parties' rights under the Facultative Certificate, including but not limited to, the obligations of Global to pay past, current and future billings in a timely manner.

29.    CNIC is entitled to a declaration of its rights under the Facultative Certificate.

WHEREFORE, CNIC demands that judgment be entered in its favor and against Global as follows:

    (a)    Declaring that Global is obligated to pay past, current and future billings from CNIC in a timely manner;

    (b)    Awarding CNIC attorneys' fees, interest and costs of suit; and

    (c)    Awarding CNIC such other relief the Court deems appropriate.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

BY: _____

Christine G. Russell (Atty. No. 76915)
Ellen K. Burrows (Atty. No. 38647)
Brendan D. McQuiggan (Atty. No. 206567)
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
Phone: 215.864.6301/7173

*Attorneys for Plaintiff,*
*ACE Property & Casualty Insurance Company*
*(f/k/a/ CIGNA Property & Casualty Insurance*
*Company), as Successor in Interest to Central*
*National Insurance Company Of Omaha, as*
*Respects Policies Issued Through Cravens,*
*Dargan & Company, Pacific Coast*

April 13, 2011

### VERIFICATION

I, Judith A. Harnadek, hereby verify that I am a Vice President at Resolute Management Inc., Mid-Atlantic Division; that Resolute Management is the claims administrator for ACE Property & Casualty Insurance Company (f/k/a CIGNA Property & Casualty Insurance Company), as successor in interest to Central National Insurance Company of Omaha, as respects policies issued through Cravens, Dargan & Company, Pacific Coast; that I am authorized to make this verification on behalf of ACE Property & Casualty Insurance Company, and that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements made therein are subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Date: 4/13/11

Judith A. Harnadek

7444966v.1

Case ID: 110401531

Filed and Attested by
PROTHONOTARY
13 APR 2011 05:24 pm
S. GARRETT

# EXHIBIT

# A

# CONSTITUTION REINSURANCE CORPORATION

110 WILLIAM STREET • NEW YORK, N.Y. 10038



<u>64217</u>
CERTIFICATE NUMBER

CEDING COMPANY AND ADDRESS

## THE CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA



| NAME OF INSURED | COMPANY POLICY NUMBER | | |
|---|---|---|---|
| WYLAIN, INC | CNU 12 48 72 | | |
| CITY | | STATE | ZIP |
| DALLAS | | TEXAS | 75231 |
| REINSURANCE POLICY PERIOD | COMPANY POLICY PERIOD | RENEWAL CERTIFICATE NO. | |
| 12/31/76 | 12/31/77 | 12/31/76 TO 12/31/77 | |

REPLACES CERTIFICATE NO.

**ITEM 1 - TYPE OF INSURANCE**

EXCESS UMBRELLA LIABILITY

**ITEM 2 - POLICY LIMITS & APPLICATION**

$25,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
EXCESS OF UNDERLYING INSURANCE

**ITEM 3 - COMPANY RETENTION**

$23,000,000 SUBJECT TO FACULTATIVE REINSURANCE

**ITEM 4 - REINSURANCE ACCEPTED**

$2,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE
PART OF $15,000,000 WHICH IS EXCESS OF $10,000,000 WHICH IN TURN
IS EXCESS OF UNDERLYING INSURANCE

**ITEM 5 - BASIS OF ACCEPTANCE**

[x] EXCESS OF LOSS        [ ] CONTRIBUTING EXCESS        [ ] NON-CONCURRENT

**ITEM 6 - PREMIUM**

$4,000.00 LESS 25% CEDING COMMISSION

**ITEM 7 - CANCELLATION NOTICE**

45 DAYS

CONSTITUTION REINSURANCE CORPORATION        BY

AUTHORIZED SIGNATURE

VICE PRESIDENT

FM 16 (1.03) (1-77)

COMPANY COPY

# CERTIFICATE OF REINSURANCE

## CONSTITUTION REINSURANCE CORPORATION
110 WILLIAM STREET
NEW YORK, NEW YORK 10038
herein called the Reinsurer

### REINSURING AGREEMENTS AND CONDITIONS

In consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declarations made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the Declarations (herein called the Company) in respect of the Company's policy(ies) as follows:

A. The Company warrants to retain for its own account, subject to treaty reinsurance if applicable, the amount of liability specified in Item 5 of the Declarations, unless otherwise declared to the Reinsurer. The liability of the Reinsurer, as specified in Item 4 of the Declarations, shall follow that of the Company and shall be subject in all respects to all the terms and conditions of the Company's policy except when otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations. The Reinsurer's Certificate period shall be as specified in the Declarations at 12:01 AM as to both dates at the place specified in the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto and as a condition precedent agrees to notify the Reinsurer promptly of all changes which in any manner affect this Certificate of Reinsurance. The Company shall make available for inspection, and place at the disposal of the Reinsurer at all reasonable times, all records of the Company relating to this Certificate of Reinsurance or claims in connection herewith.

B. Liability of the Reinsurer for any damages assessed against the Company arising out of its conduct in the investigation, negotiation, defense or handling of any claim or suits or in any dealings with its policyholders is specifically excluded under this Certificate unless the Reinsurer shall have been made aware of and shall have concurred in the actions giving rise to such damages.

C. In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor, have any rights under this Certificate of Reinsurance.

D. As a condition precedent, the Company shall promptly provide the Reinsurer with a definitive statement of loss on any claim or occurrence reported to the Company and brought under this Certificate which involves a death, serious injury or lawsuit. The Company shall also notify the Reinsurer promptly of any claim or occurrence where the Company has reserved a sum reserve equal to fifty (50) percent of the Company's retention specified in Item 3 of the Declarations. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and shall be given the opportunity, with the full cooperation of the Company, to associate counsel at its own expense and to join with the Company and its representatives in the defense and control of any claim, suit or proceeding involving this Certificate of Reinsurance.

E. All loss settlements made by the Company, provided they are within the terms and conditions of the original policy(ies) and within the terms and conditions of this Certificate of Reinsurance, shall be binding on the Reinsurer. Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses (other than office expenses and payments to any salaried employees) incurred by the Company in the investigation and in the proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment. If there is no loss payment, the Reinsurer shall pay its proportion of such expenses only in respect of business accepted on a contributing excess basis and then only in the percentage stated in Item 4 of the Declarations in the first layer of participation.

F. Definitions
As used in this Certificate the following terms shall have the meaning set opposite each.

EXCESS OF LOSS The limit(s) of liability of the Reinsurer, as stated in Item 4 of the Declarations (Reinsurance Accepted) applies(y) only to that portion of loss settlement(s) in excess of the applicable retention of the Company as stated in Item 3 of the Declarations.

CONTRIBUTING EXCESS The Company's policy applies in excess of other valid insurance, reinsurance or a self insured retention and the limit of liability of the Reinsurer applies proportionally to all loss settlements in the percentage(s) set forth in Item 4 of the Declarations.

NON-CONCURRENT The reinsurance provided does not apply to any hazards or risk of loss or damage covered under the Company's policy other than those specifically set forth in the Declarations. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in the Declarations.

DEFINITIVE STATEMENT OF LOSS Shall consist of those parts or portions of the Company's investigative claim file which in the judgment of the Reinsurer are wholly sufficient for the Reinsurer to establish adequate loss reserves and determine the propensities of any loss reported hereunder.

G. The Reinsurer will be paid or credited by the Company with its proportion of salvage, that is, reimbursement obtained or recovery made by the Company, less all expenses paid by the Company in making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

H. The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate of Reinsurance

I. In the event of the insolvency of the Company, the reinsurance provided by this Certificate shall be payable by the Reinsurer on the basis of liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company or its receiver, liquidator, or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company on the policy(ies) reinsured hereunder within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which it may deem available to the Company or its receiver, liquidator, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

J. The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, salvage or any other amounts due from one party to the other under this Certificate of Reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding Company.

K. Should the Company's policy be cancelled this Certificate shall terminate automatically at the same time and date. This Certificate may also be cancelled by the Company or by the Reinsurer upon not less than the number of days shown in Item 7 except ten (10) days for non-payment of premium with prior written notice, one to the other, stating when thereafter the reinsurance afforded hereby shall terminate. Proof of mailing shall be deemed proof of notice and calculation of the earned premium shall follow the Company's calculation in the use of short rate or pro rata tables.

L. The terms of this Certificate of Reinsurance shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

**In Witness Whereof,** CONSTITUTION REINSURANCE CORPORATION has caused this Certificate of Reinsurance to be signed by its President and Secretary at New York, New York but the same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

_Secretary_                                         _President_

RECEIVED
APR 1 6 EN'D
REINS. DEPT.

Case ID: 110401531

ENDORSEMENT                                        NO....1.....

FOR ATTACHMENT TO CERTIFICATE NO. 54317 . BETWEEN A/C: NYLAIN, INC.............................
R/I: CENTRAL NATIONAL INS. CO. OF OMAHA . # CED 12 46 73 .
CONSTITUTION REINSURANCE CORPORATION, EFFECTIVE DATE OF THIS ENDORSEMENT   DECEMBER 31, 1977

FROM 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

2,745

FOR AND IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF
$3,629.00 LESS 25% CEDING COMMISSION, IT IS UNDERSTOOD
AND AGREED THAT THE CERTIFICATE OF WHICH THIS ENDORSEMENT
FORMS A PART OF SHALL BE EXTENDED TO EXPIRE ON AUGUST 1, 1978.

IT IS FURTHER UNDERSTOOD AND AGREED THAT EFFECTIVE FOR THE
PERIOD OF 12/31/77 TO 08/01/78 THE UNDERLYING AGGREGATE LIMITS
WHERE APPLICABLE SHALL BE UNIMPAIRED AND FOR THE PURPOSE OF THIS
REINSURANCE ONLY OCCURRENCES TAKING PLACE DURING THE TERM OF
12/31/77 TO 08/01/78 SHALL BE CONSIDERED IN DETERMINING THE EXTENT
OF ANY EXHAUSTION OF THE UNDERLYING AGGREGATE LIMITS.

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

In Witness Whereof, THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

_____                        _____
       Secretary                                     President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS ......29th...... DAY OF ..DECEMBER...., 19..77..
                                          CONSTITUTION REINSURANCE CORPORATION

BROKER COPY

ENDORSEMENT                              NO...2......

FOR ATTACHMENT TO CERTIFICATE NO.  64217       BETWEEN A/C: WYLAIN, INC.
R/I: CENTRAL NATIONAL INS. CO. OF OMAHA   # CNU 12 48 72
CONSTITUTION REINSURANCE CORPORATION. EFFECTIVE DATE OF THIS ENDORSEMENT . . DECEMBER 31, 1977   and

FROM, 12:01 O'CLOCK A.M. STANDARD TIME OF THE ABOVE EFFECTIVE DATE IT IS UNDERSTOOD AND AGREED THAT
THE CERTIFICATE OF WHICH THIS ENDORSEMENT FORMS A PART IS HEREBY AMENDED IN THE FOLLOWING PARTICULARS:

FEB 1 1978
LLOYDS DEPT.

FOR AND IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF
$116.00 LESS 25% CEDING COMMISSION, IT IS UNDERSTOOD
AND AGREED THAT THE PREMIUM ON OUR ENDORSEMENT NUMBER
ONE (1) SHALL BE AMENDED TO READ AS FOLLOWS:

$2,745.60 LESS 25% CEDING COMMISSION

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

In Witness Whereof, THE CONSTITUTION REINSURANCE CORPORATION HAS CAUSED THIS ENDORSEMENT TO
BE SIGNED BY ITS PRESIDENT AND SECRETARY AT NEW YORK, NEW YORK, BUT THE SAME SHALL NOT BE BINDING
UPON THE REINSURER UNLESS COUNTERSIGNED BY ANOTHER OFFICER OF THE REINSURER.

_____                    _____
      Secretary                                  President

COUNTERSIGNED AT NEW YORK, NEW YORK THIS ...........16th........... DAY OF ...JANUARY......... 19..78..
                                    CONSTITUTION REINSURANCE CORPORATION

                    _____

                    COMPANY COPY

Case ID: 110401531

## NUCLEAR INCIDENT EXCLUSION CLAUSE – LIABILITY – REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

    I. It is agreed that the policy does not apply under any liability coverage,
to { *injury, sickness, disease, death or destruction* with respect to which an insured under the policy is also
      { bodily injury or property damage
an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

    II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only). Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

    III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
        (a) become effective on or after 1st May, 1960, or
        (b) become effective before that date and contain the Limited Exclusion Provision set out above;
provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company (new, renewal and replacement) affording the following coverages;

    Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.*

It is agreed that the policy does not apply:

    I. Under any Liability Coverage, to { *injury, sickness, disease, death or destruction*
                      { bodily injury or property damage
        (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
        (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating
to { *immediate medical or surgical relief,* to expenses incurred with respect
      { first aid,
to { *bodily injury, sickness, disease or death* resulting from the hazardous properties of nuclear material
      { bodily injury
and arising out of the operation of a nuclear facility by any person or organization.

– 1 –

Case ID: 110401531

III. Under any Liability Coverage, to $\begin{cases} \textit{injury, sickness, disease, death, or destruction} \\ \text{bodily injury or property damage} \end{cases}$ resulting from the hazardous properties of nuclear material, if

   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (c) the $\begin{cases} \textit{injury, sickness, disease, death or destruction} \\ \text{bodily injury or property damage} \end{cases}$ arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to $\begin{cases} \textit{injury to or destruction of property at such nuclear facility.} \\ \text{property damage to such nuclear facility and any property thereat.} \end{cases}$

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*With respect to injury to or destruction of property, the word "injury" or "destruction"* "property damage" includes all forms of radioactive contamination of property. *includes all forms of radioactive contamination of property.*

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph (3) shall not be applicable to

   (i) Garage and Automobile Policies issued by the Company on New York risks, or

   (ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts, until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

   (4) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurance Conference of Canada.

  \*NOTE. The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing those words.

- 2 -

RECEIVED
APR 1 ? 1??
REINS. DEPT.